IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


SERGIO REYES, individually and d/b/a
SERGIO EYES TRUCKING, f/u/b
GREAT WEST CASUALTY COMPANY                                        PLAINTIFFS


v.                                             No. 3:04CV00200 GH


CHOCTAW INC. and
LEON HARDAWAY                        DEFENDANTS/THIRD PARTY PLAINTIFFS

v.

ALFREDO VELA, SANTIAGO CEPEDA
and YSENIA CEPEDA                               THIRD PARTY DEFENDANTS



**ORDER**

Plaintiffs, on May 28, 2004, filed a complaint based on diversity jurisdiction alleging

negligence, conversion, property damage and/or recovery of workers' compensation benefits paid

as a result of Choctaw's employee Hardaway's negligence in a collision that injured Reyes'

employees Vela and Cepeda.  They seek judgment in an amount of not less than $195,150.82 that

was paid to Vela and Cepeda as workers compensation benefits as a result of the accident.

On February 17th, defendants filed a joint motion for summary judgment supported by brief,

exhibits and a separate statement of undisputed facts.  They argue that Vela and Cepeda were not

made whole by the settlement reached with defendants and so the right to subrogation did not arise,

plaintiffs are precluded from asserting a claim against defendants because they are not in possession

of any "proceeds" that plaintiffs can recover, and Vela and Cepeda have extinguished any claims

they had against defendants so plaintiffs cannot subrogate extinguished claims.  In the alternative, they assert that plaintiffs' recovery is limited to a first lien upon two-thirds of the proceeds or net settlement received by Vela and Cepeda from defendants after the payment of the reasonable costs of collection and attorney's fees.

Plaintiffs, on February 20th, filed a combined motion for partial summary judgment that they possess the right to recover from defendants as plaintiffs did not receive notice of the intention to settle the employees' claims and their response to defendants' motion.  In support, they filed a brief, exhibits, and their own statement of undisputed facts.  The next day, they filed a response to defendants' statement and a signed affidavit with attached letters.

Plaintiffs argue that they have an absolute statutory lien which is not qualified by its terms and the judicially engrafted "made whole doctrine" is wrong and not applicable here since that is only when the tortfeasor, the employee(s) and the carrier were before the court as a result of actual notice to the carrier of an intent to settle the employee's third party claims.  They mainly rely on the case of Liberty Mut. Ins. Co. v. Whitaker, 128 S.W.3d 473 (Ark. App. 2003) as holding that the employee's release of a tortfeasor without the knowledge or consent of the workers compensation carrier does not bar the carrier's subrogation claim against the tortfeasor and the carrier's failure to give notice of its subrogation claim does not preclude suit against the tortfeasor.  Plaintiffs assert that Ark. Code Ann. §11-9-410(a)(1)(B) requiring the employee to receive 1/3 and the carrier 2/3 of any money recovered by the carrier in its suit does not apply to or control the obligations of the tortfeasor to the employer or carrier and, even if it did apply, Great West might be obliged to remit 1/3 of the amount recovered to the employees.

On March 2nd, defendants filed a reply and a responsive statement of facts.  They first argue that plaintiffs did not plead a claim for recovery of a property interest.  Defendants next counter that plaintiffs do not have an absolute statutory right of subrogation and that the issue of notice is not dispositive to whether the made whole doctrine is applicable – an issue that Whitaker does not address.  To plaintiffs' position that they are entitled to recover all amounts paid in benefits to Cepeda and Vela, defendants contend that plaintiffs are necessarily asserting that Cepeda and Vela have received a total recovery and have been unjustly enriched which is not true here.  They also take issue whether the purported notices subrogation were sufficient.

Plaintiffs filed a reply on March 8th that they clearly asserted damage to their property in the complaint.  They continue that the made whole doctrine has been applied only in those situations where the employer/carrier were given proper notice and a hearing was conducted by the court before settlement occurred and common sense does not support defendants' theory that Whitaker provides that plaintiffs can sue, yet not recover.  Plaintiffs maintain that defendants were on actual, implied and constructive notice of plaintiffs' rights and submit return receipt cards to demonstrate actual notice.  Assuming for purposes of argument that defendants are correct, plaintiffs assert that defendants' actions establish a claim of tortious interference with plaintiffs' business expectancy.

Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party.  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2512 (1986).  The non-moving party may not just rest upon his or her pleadings, but must set forth specific facts showing

that there is a genuine issue for trial.  <u>Celotex Corp. v. Catrett</u>, 106 S.Ct. 2548 (1986); Civil

Procedure Rule 56.  "The mere existence of a factual dispute is insufficient alone to bar summary

judgment; rather the dispute must be outcome determinative under prevailing law."  <u>Holloway v.

Pigman</u>, 884 F.2d 365, 366 (8th Cir. 1989).

Local Rule 56.1 provides that a party moving for summary judgment must file a separate,

short and concise statement of material facts as to which it contends there is no genuine issue to be

tried.  The rule further provides that unless the non-moving party files a separate, short and concise

statement of the material facts as to which it contends a genuine issue exists to be tried, all material

facts set forth in the moving party's statement will be deemed admitted.

Defendants' Local Rule 56.1 statement follows with plaintiffs' response reflected in the

brackets:

1.   This is a subrogation action.  [Admitted.]

2.   On June 29, 2001, an accident occurred on Interstate Highway 40 in Crittenden County
     involving a truck driven by Leon Hardaway (Hardaway") and a vehicle driven by a third
     party not involved in this lawsuit.  [Admitted.]

3.   The third-party vehicle slid under a trailer occupied by Alfredo Vela ("Vela") and Santiago
     Cepeda ("Cepeda").  [Plaintiffs admit that the Choctaw vehicle's impact caused the third
     party vehicle to slide under the trailer being pulled by Vela and Cepeda.]

4.   At the time of the accident, Hardaway was employed by Choctaw, Incorporated ("Choctaw")
     and was acting within the course and scope of his employment.  Cepeda and Vela were
     employed by Sergio Reyes d/b/a Sergio Reyes Trucking ("Reyes") and were also acting
     within the course and scope of their employment at the time of the accident.  [Admitted.]

5.  Cepeda and Vela were injured in the accident.  According to medical records released by plaintiffs' attorney Evan Nahmias, Vela's medical bills for treatment associated with injuries sustained in the accident totaled $30,210.55.  According to medical records released by plaintiffs' attorney Evan Nahmias, Cepeda's medical bills for treatment associated with injuries sustained in the accident totaled $117,418.28.  [Plaintiffs admit that Cepeda and Vela were injured in the accident.  Plaintiffs' computation of the medical bills differ by a *de minimus* amount and therefor, for purposes of this motion, only, the dollar figures are admitted.]

6.  Vela, Cepeda and Cepeda's wife (collectively referred to as "the Cepedas"), made claims against Choctaw and Hardaway alleging injuries sustained by the Cepedas and Vela were due to the actions of Choctaw's employee, Hardaway.  [Admitted.]

7.  Vela and the Cepedas ultimately settled and extinguished their claims and causes of action against Choctaw and Hardaway and executed a "Joint Tort-Feasor's Release ("the Release") dated December 23, 2002.  In consideration for Choctaw's and Hardaway's release from any and all liability, the Cepedas agreed to accept the payment of the sum of $18,000 and Vela agreed to accept the payment of the sum of $17,000.  [Plaintiffs admit that defendants produced a document purporting to bear the signature of Cepeda and Vela.  Plaintiffs assert that the legal significance of the Release is a question of law for the Court.]

8.  The amounts referenced in the preceding paragraph were paid in full. [Plaintiffs have no information to admit or deny this assertion.  For purposes of this motion, only, this assertion is admitted.]

9.    Cepeda and Vela each earned a separate weekly salary of $592.28 at the time of the accident. [Admitted for purposes of this motion.]

10.   Vel and Cepeda received workers' compensation benefits from Reyes and his workers' compensation carrier, Great West, for the injuries they sustained in the accident, including payments for medical services and temporary total disability payments.  [Admitted.]

11.   Cepeda was paid temporary total disability benefits for one hundred five (105) weeks totaling $42,207.  [Plaintiffs admit making disability payments to Cepeda and, for purposes of this motion, only, admits the dollar figure asserted by defendants.]

12.   Vela was paid temporary total disability benefits for fifty three weeks (53) weeks totaling $20,956.  [Plaintiffs admit making disability payments to Vela and for purposes of this motion, only, admit the dollar figure asserted within this paragraph.]

13.   Vela and Cepeda also filed workers' compensation claims against Reyes, which were settled. Vela entered into a Compromise Stipulation for Award ("Vela Workers' Compensation Award") with Reyes that was approved by the Hearing Officer on July 31, 2002.  Cepeda entered into a Compromise Stipulation of Award ("Cepeda Workers' Compensation Award") with Reyes that was approved by the Hearing Officer on September 24, 2003.  Specifically, in consideration for Reyes' release from future payments of disability, permanent impairment or statutory medical services or supplies for any injury, past, present or future, Cepeda agreed to payment of the sum of $25,000 and Vela agreed to payment of the sum of $22,500.  [Admitted.]

14.   On December 23, 2004, Great West filed suit against Vela, Cepeda, and their attorney, Eugene Mercier, in the District Court of Nueces County, Texas, 28 Judicial District, alleging

causes of action for fraud, conversion, negligence, gross negligence, malpractice, tortious interference with contract and prospective relations and constructive trust.  [Admitted.]

15.   In the lawsuit mentioned in the preceding paragraph, Great West alleged that it notified Mercier of its lien and intention to assert such lien against liable third parties and that Mercier represented to Great West that he did not represent Vela and Cepeda with regard to their third party claims and that he would take no action which would impair Great West's lien.  However, according to Great West's complaint, Mercier did pursue and obtain a release and settlement of Vela's and Cepeda's claims against Choctaw and Hardaway. [Admitted.]

16.   Great West's claims against Vela, Cepeda and Mercier are still pending.  [Admitted.]

17.   The defendants in this action do not have possession, control, or dominion over any amounts recovered by Cepeda and/or Vela.  [Plaintiff has insufficient information to admit or deny this assertion.  For purposes of this motion, only, plaintiff admit that any amounts allegedly paid to Cepeda or Vela have been made.]

Plaintiffs add the following facts as defeating defendants' motion:

1.   Plaintiffs were not given any notice of Cepeda or Vela's claims or settlement negotiations with defendants at any time before the Release was signed.

2.   Defendants are insured by ESIS.

3.   Defendants are insured by SafeCo.

4.   On or about August 2, 2002, well in advance of the signing of the Release, Great West notified defendants' insurers that Great West was asserting its workers' compensation subrogation lien arising from the subject accident.

Plaintiffs' Local Rule 56.1 statement in support of their motion follow with defendants' response contained in brackets:

1.    On June 29, 2001, at approximately 8:35 a.m. on Interstate I-40 in Crittenden County, Arkansas, Leon Hardaway ("Hardaway'), an agent of Choctaw, Inc. ("Choctaw") (collectively "defendants") was operating Choctaw's 1991 International Tractor, heading eastbound near mile maker 283 when he collided with a vehicle that was pushed under the commercial tractor trailer occupied by Antonio Cepeda ("Cepeda") and Alfredo Vela ("Vela") (collectively "employees"). [Admit.]

2.    Vela is a resident of Laredo, Texas and was operating a 2001 Volvo tractor trailer as an employee or agent of Sergio Reyes d/b/a Sergio Reyes Trucking ("Reyes"). [Defendants are without knowledge of the residency of Vela, and therefore deny plaintiffs' statement regarding the residency of Vela.  Defendants admit that Vela operated a tractor trailer as an employee or agent of Reyes on June 29, 2001.]

3.    Cepeda is a resident of Laredo, Texas and was an employee or agent on or about the business of Reyes on June 29, 2001 and was a passenger in Reyes' vehicle driven by Vela. [Defendants are without knowledge of the residency of Cepeda, and therefore deny plaintiffs' statement regarding the residency of Cepeda. Defendants admit on June 29, 2001, Cepeda was an employee or agent of Reyes and was a passenger in Reyes' vehicle driven by Vela.]

4.    Vela had brought the Reyes vehicle to a stop due to heavy traffic conditions secondary to construction. [Defendants are without knowledge or information sufficient to form a belief

as to the truth of the statements contained in that paragraph and therefore deny those statements.]

5.   Hardaway was looking down before the accident.  [Deny]

6.   Hardaway did not apply his brakes before impact.  [Deny]

7.   Choctaw, through Hardaway, slammed into a third party vehicle with such force that it was shoved under the vehicle occupied by Cepeda and Vela.  [Deny.]

8.   Cepeda and Vela were injured in the accident.  [Admit.]

9.   Great West Casualty Company "(Great West"), as the workers compensation carrier for Reyes, paid Cepeda and Vela workers compensation benefits pursuant to the laws of the State of Indiana.  [Admit that Great West, as the workers' compensation carrier for Reyes, paid Cepeda and Vela workers' compensation benefits.  Defendants are without knowledge or information sufficient to form a belief as to the truth or the statement that the benefits paid were pursuant to the laws of the State of Indiana and therefore deny that statement.]

10.  For purpose of this motion, the dollar amounts related to this accident as set forth in defendants' statement of material faces are admitted.  [Admit.]

11.  Great West paid benefits related to Cepeda as follows: $57,564.20 medical, $67,807.56 indemnity or disability for a total of $125,371.76.  [Admit.]

12.  Great West paid benefits related to Vela as follows: $24,067.41 in medical and $43,456.44 in disability for a total of $67,523.85.  [Admit.]

13.  Therefore Great West seeks recoupment of $192,895.61.  [Admit that Great West seeks recoupment of $192,895.61, but deny that it is entitled to recoupment from defendants.]

14.     On or about December 23, 2002, Cepeda and Vela signed a document entitled Joint-
        Tortfeasors Release ("the Release").  [Admit.]

15.     This is a suit for subrogation.  [Admit that plaintiffs have brought this suit seeking
        subrogation on a workers' compensation lien, but deny that plaintiffs are entitled to
        subrogation from defendants.]

16.     Plaintiffs were not given any notice of Cepeda and Vela's claims or settlement negotiations
        with defendants at any time before the Release was signed.  [Defendants are without
        knowledge or information sufficient to form a belief as to the truth of the statements
        contained in that paragraph and therefore deny those statements.]

17.     Defendants are insured by ESIS.  [Admit.]

18.     Defendants are insured by SafeCo.  [Deny.]

19.     On or about August 2, 2002, well in advance of the signing of the Release, Great West
        notified Defendants' insurer that Great West was asserting its workers' compensation
        subrogation lien arising from the subject accident.  [Deny.]

        It should also be noted that attached to plaintiffs' March 6th pretrial disclosure sheet is a

stipulation by defendants that "Choctaw, Inc., and Leon Hardaway hereby stipulate that the accident

in question was caused by the negligence of Lean Hardaway who was acting in the course and scope

of his employment for Choctaw, Inc., at the time of the accident."

        While acknowledging the statutory right of subrogation to employers and workers'

compensation carriers pursuant to Arkansas law, defendants

        "Ark. Code Ann. §11-9-410.  Action against third party" provides the following:

        (a) LIABILITY UNAFFECTED. (1)(A) The making of a claim for compensation against any
        employer or carrier for the injury or death of an employee shall not affect the right of the

employee, or his or her dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or the employer's carrier shall be entitled to reasonable notice and opportunity to join in the action.

(B) If they, or either of them, join in the action, they shall be entitled to a first lien upon two-thirds (2/3) of the net proceeds recovered in the action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his or her dependents.

(2) The commencement of an action by an employee or his or her dependents against a third party for damages by reason of an injury to which this chapter is applicable, or the adjustment of any claim, shall not affect the rights of the injured employee or his or her dependents to recover compensation, but any amount recovered by the injured employee or his or her dependents from a third party shall be applied as follows:

(A) Reasonable costs of collection shall be deducted;
(B) Then, in every case, one-third (1/3) of the remainder shall belong to the injured employee or his or her dependents, as the case may be;
(C) The remainder, or so much as is necessary to discharge the actual amount of the liability of the employer and the carrier; and
(D) Any excess shall belong to the injured employee or his or her dependents.

(b) SUBROGATION. (1) An employer or carrier liable for compensation under this chapter for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for the injury or death.  However, the employer or the carrier must notify the claimant in writing that the claimant has the right to hire a private attorney to pursue any benefits to which the claimant is entitled in addition to the subrogation interest against any third party responsible for the injury or death.

(2) After reasonable notice and opportunity to be represented in the action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in the action, as well as the third party's liability to the employer and carrier.

(3)(A) After recovery shall be had against the third party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection.
(B) In no event shall the compensation beneficiary be entitled to less than one-third ( 1/3 ) of the amount recovered from the third party, after deducting the reasonable cost of collection.

(4) An employer or carrier who is liable for compensation under this chapter on account of injury or death of an employee shall be entitled to maintain a third party action against the employer's uninsured motorist coverage or underinsured motorist coverage.

(5) The purpose and intent of this subsection is to prevent double payment to the employee.

(c) SETTLEMENT OF CLAIMS. (1) Settlement of claims under subsections (a) and (b) of this section must have the approval of the court or of the commission, except that the distribution of that portion of the settlement which represents the compensation payable under this chapter must have the approval of the commission.

   (2) Where liability is admitted to the injured employee or his or her dependents by the employer or carrier, the cost of collection may be deducted from that portion of the settlement under subsections (a) or (b) of this section representing compensation, upon direction and approval of the commission.

   (3) No party shall settle a claim under subsections (a) and (b) of this section without first giving three (3) days' written notice to all parties with an interest in the claim of the intent to settle.

   (4) Each party with an interest in a claim under subsections (a) and (b) shall cooperate with all other parties in litigation or settlement of such claims.

After extensive research and careful consideration of the law, the Court has concluded that

plaintiffs' have correctly cited Liberty Mut. Ins. Co. v. Whitaker, 83 Ark.App. 412, 128 S.W.3d 473

(Ark.App. 2003), as the most comparable case factually.  The following excerpts, although rather

lengthy, illustrate the similarities:

   Appellant Liberty Mutual is the workers' compensation carrier for TCBY, and it accepted Glover's injuries as compensable, paying workers' compensation benefits in the amount of $14,370.31 to Glover.

   On March 15, 2000, Glover filed a lawsuit against Whitaker, seeking damages resulting from the motor-vehicle accident. Southern Farm Bureau ("Southern Farm"), Whitaker's liability insurance carrier, acting on behalf of its insured, entered into a settlement agreement with Glover two days later, on March 17, 2000.  In exchange for payment of $45,000, Glover signed a release agreement in favor of Whitaker and Southern Farm.  The agreement provided that Whitaker and Southern Farm were released from "any and all claims" on account of or in "any way growing out of the injuries sustained by" Glover in the accident. The settlement agreement was not approved by a court or the Workers' Compensation

Commission. An order was entered on March 31, 2000, dismissing Glover's complaint with prejudice.

On February 4, 2002, Liberty Mutual filed suit against Glover and Whitaker, jointly and severally, seeking to recover the workers' compensation benefits it had paid to Glover. Liberty Mutual's complaint was based on the subrogation provisions of Ark. Code Ann. § 11-9-410 (Repl. 2002), as well as the theories of negligence, unjust enrichment, and restitution. [83 Ark.App. at 415, 128 S.W.3d at 473-474 .]

****
Whitaker subsequently filed a motion for summary judgment, alleging that Liberty Mutual could not recover from him as a matter of law. Whitaker alleged that he had nothing to do with the settlement agreement, which was procured by his insurance company, and that Liberty Mutual's claim for a subrogation lien did not state a cause of action against him because he never had control of the funds. Whitaker also asserted that Liberty Mutual's claim against him was barred by the release signed by Glover and that its claim for unjust enrichment and restitution did not state a cause of action against him because he never had possession of the settlement funds. Whitaker attached the affidavit of Southern Farm's insurance adjuster, who stated that Southern Farm never had any notice of Liberty Mutual's purported lien and that Whitaker had no control over the settlement or custody of the funds.

In its response to Whitaker's motion for summary judgment, Liberty Mutual argued that it was entitled to a subrogation lien on the proceeds of the settlement agreement under section 11-9-410 and that Whitaker and Glover had violated the requirements of that statute by not giving it notice of the settlement and by not having the settlement approved by a court or the Commission. Liberty Mutual also argued that the release by Glover did not preclude it from pursuing judgment against Whitaker because the release did not address its subrogation rights. In addition, Liberty Mutual stated that it had a valid cause of action for unjust enrichment and restitution against Whitaker. It attached the affidavit of its claims manager, Kris Opal, who stated that Liberty Mutual had sent a letter to Whitaker on October 25, 1999, notifying him that it had paid benefits to Glover and that it was entitled to a subrogation lien to recover such payments. Opal also stated that Liberty Mutual received no notice that a lawsuit was filed or that a settlement agreement was reached until after March 17, 2000.

After a hearing, the trial court found that Liberty Mutual failed to protect its own interests by failing to give notice of its lien to Southern Farm and that notice to Whitaker was not adequate. The trial court stated that Southern Farm had procured a full, final, and complete release in favor of Whitaker, without notice of any lien by Liberty Mutual, and that Whitaker was not subject to suit for the lien because he had been fully and properly released by Glover. The trial court granted partial summary judgment to Whitaker, stating that Liberty Mutual's claims against Glover were not affected by the order. Liberty Mutual then moved to have its claims against Glover dismissed without prejudice, which was granted by the trial court. Liberty Mutual now appeals from the trial court's grant of summary judgment to Whitaker.

Liberty Mutual argues two main points on appeal: (1) that the trial court misapplied and incorrectly interpreted Ark. Code Ann. § 11-9-410 by ruling that Liberty Mutual was required to give notice of its lien to Whitaker's insurer in order to protect the lien; and (2) that the trial court erred by ruling that the release procured by Whitaker without the knowledge or consent of Liberty Mutual prohibits Liberty Mutual from pursuing its right of subrogation against him.   More specifically, Liberty Mutual asserts that Glover and Whitaker, along with Whitaker's insurer, failed to comply with the settlement requirements provided in Ark. Code Ann. § 11-9-410(c).   In addition, Liberty Mutual contends that the release signed by Glover in favor of Whitaker is not effective to bar its claims against Whitaker because it had no notice of the release agreement.   Liberty Mutual thus contends that it is entitled under Ark. Code Ann. § 11-9-410 to pursue an action against Whitaker, the third-party tortfeasor, to recover the workers' compensation benefits it paid to Glover and that the trial court erred in interpreting this statute and in finding that it was required to give notice to Southern Farm to protect its lien.   [83 Ark.App. at 415-417, 128 S.W.3d at 474-475]

****

The supreme court further clarified its holding in <u>Wood in Travelers Insurance Co. v. McCluskey</u>, 252 Ark. 1045, 483 S.W.2d 179 (1972), and stated that the employee may "settle around" the compensation carrier and reserve the carrier's rights against the tortfeasor; however, since the purpose of the statute is to protect both the compensation carrier and the employee, the court stated that it would thereafter require that the proceeds of any settlement be subject to the lien of the employer or carrier, unless the settlement has been approved by a court having jurisdiction or by the Commission, after the carrier had been afforded adequate opportunity to be heard.   [83 Ark.App. at 420, 128 S.W.3d at 477.]

****

Finally, in <u>Wentworth v. Sparks Regional Medical Center</u>, 58 Ark.App. 242, 950 S.W.2d 221 (1997), a case relied upon heavily by Liberty Mutual, the injured employee settled with the third-party tortfeasor, without notice to her compensation carrier and without court or Commission approval.   The release executed by the employee failed to reserve and protect any subrogation or lien rights of the carrier, and it operated as a bar to any action by the carrier against the tortfeasor.   The employee never filed a lawsuit against the tortfeasor. <u>Id</u>. The court noted that an employee and a tortfeasor may settle around the employer or carrier's right to a lien on the settlement proceeds where at least three conditions are met: (1) the settlement agreement between the employee and third party must protect the statutory right of the employer or carrier to pursue an action against the third party tortfeasor; (2) the employer or carrier must be provided reasonable notice of the proposed settlement and an opportunity to be heard; and (3) the settlement agreement must be approved by a court or the Commission. <u>Id.</u> The court held that the settlement agreement in that case failed to meet these conditions and thus found that the carrier was entitled to a credit based upon the settlement. <u>Id.</u> The court also noted that section 11-9-410(c) had been revised to make these

-14-

conditions even more explicit, by requiring that the parties to a settlement give three days' written notice of their intent to settle and that they cooperate with all other parties with an interest in a settlement.  Id.

Although none of these cases are controlling of the present case, their holdings are relevant to the interpretation given to section 11-9-410 by the appellate courts.  From these cases, it is clear that Liberty Mutual in this case was denied its statutory right either to participate in the action against the tortfeasor or to have notice of the settlement and an opportunity to be heard.  It is also clear that Liberty Mutual is entitled, under the holding in Wentworth, supra, to a credit against the settlement proceeds; however, that case involved the employee and not an action by the carrier against the tortfeasor as in this case.  Liberty Mutual does not argue that it cannot pursue its lien against Glover, and it is apparent under Wentworth that it may do so.  Rather, Liberty Mutual asserts that it may also assert its lien against Whitaker in this situation.  [83 Ark.App. at 421-422, 128 S.W.3d at 477- 478]

\*\*\*\*

The trial court found that Liberty Mutual was not entitled to assert its lien against Whitaker because it had not given notice of its lien to Southern Farm and because the release signed by Glover barred any action by Liberty Mutual against Whitaker.  First addressing the issue of the release, Liberty Mutual argues that it cannot be bound by this release agreement because it did not have notice of the agreement.  Liberty Mutual primarily relies on general insurance case law for the proposition that no act of the insured releasing the wrongdoer from liability can defeat the insurer's rights when a release is given without the insurer's knowledge or consent, and when the wrongdoer has full knowledge of the insurer's right of subrogation.  Floyd v. Home Ins. Co., 250 Ark. 915, 467 S.W.2d 698 (1971); Sentry Ins. Co. v. Stuart, 246 Ark. 680, 439 S.W.2d 797 (1969); see also St. Paul Fire & Marine Ins. Co. v. Murray Guard, Inc., 343 Ark. 351, 37 S.W.3d 180 (2001); Daves v. Hartford Accident & Indem. Co., 302 Ark. 242, 788 S.W.2d 733 (1990).

In Sentry, supra, the insurer filed suit against its insured and the third-party wrongdoer to recover medical payments it made to its insured after the insured and the wrongdoer had settled the claim without notice to the insurer.  The court held that the insurer's cause of action against the wrongdoer was not terminated by the release executed by the insured.  Id.  Also, in Daves, supra, the insured filed suit against the tortfeasor and subsequently settled the suit without knowledge of his insurer, Hartford.  Hartford then brought suit against its insured and the tortfeasor's insurer, Sentry, claiming a statutory lien on the proceeds of the settlement. Although the release specifically stated that the insured would indemnify Sentry against future claims by Hartford, the court found that Hartford was entitled to assert its statutory lien against Sentry, noting that Sentry had full knowledge of the subrogation claim and could not ignore its responsibility to pay the lien even though it may have made improvident payment of the settlement proceeds to the insured.  Id.  In Hartford Insurance Group v. Carter, 251 Ark. 680, 473 S.W.2d 918 (1971), the court reached the opposite result and held that the release was effective against the compensation carrier; however, the court

seemed to partially base its holding upon the fact that the release was executed prior to any workers' compensation claim being filed, and in addition, the wrongdoer had no notice of any potential claim by the carrier.

It is undisputed in this case that the release agreement was executed without Liberty Mutual's knowledge or consent.  Also, Liberty Mutual's affidavit states that a letter was sent to Whitaker, the wrongdoer, informing him of its subrogation right prior to the settlement in this case, and Whitaker did not dispute this fact.  Thus, we conclude that the trial court was incorrect in finding that the release operated to bar any claims by Liberty Mutual against Whitaker.

Allowing Liberty Mutual to assert its right to a lien against Whitaker, the tortfeasor, as well as its insured, Glover, serves to further the statutory intent of preventing double recovery by the insured by also placing primary responsibility upon Whitaker, who caused the accident by his negligence.  [83 Ark.App. at 422-423, 128 S.W.3d at  478- 479.]

The only difference between Whitaker and the situation here is that the amount that the employee in Whitaker received from the tortfeasor was greater than the amount of the workers' compensation benefits paid to the employee by Liberty Mutual.  Although defendants seek to impose the made whole doctrine to bar recovery by plaintiffs, the Court is not persuaded that the made whole doctrine is applicable in a situation where the carrier did not receive notice and was deprived an opportunity to challenge the sufficiency of the settlement between the employees and the tortfeasor.  While the Court believes that plaintiffs are wrong in their criticism of the made whole doctrine, see, Caldwell v. TACC Corp., 423 F.3d 784, 787-790 (8th Cir. 2005); Logan County v. McDonald, --- S.W.3d ----, 2005 WL 768659 (Ark.App. 2005), the Court agrees that the cases where that doctrine was applied all involved an approval of the settlement by a court or the commission.  Thus, in the absence of such approval, the application of the made whole doctrine is not warranted at this time.

Consistent with the holding in Whitaker, plaintiffs are entitled to pursue their claims against defendants.

Accordingly, defendants' February 17th joint motion (#23) for summary judgment is denied.

Plaintiffs' February 20th motion (#26) for partial summary judgment is granted.

IT IS SO ORDERED this 20th day of March, 2006.

_____
UNITED STATES DISTRICT JUDGE